## Kline's Estate.

*Decedents' estates—Gift for support—Auditor's findings of fact.*

Where one removes to the home of his son-in-law, and shortly thereafter delivers to him certain promissory notes, made by the latter to the former, and two months after his change of home dies, the delivery of the notes will be construed as a gift, where an auditor finds from sufficient evidence that the notes were delivered to the son-in-law as a compensation or reward for taking care of the decedent for the remainder of his life. In such case, it is immaterial that decedent lived only two months with his son-in-law.

Exceptions to the report of James F. McClure, auditor. O. C. Union Co., Jan. T., 1923, No. 10.

*Clair Groover*, for exceptions; *Charles P. Ulrich*, contra.

POTTER, P. J., March 4, 1924.—Solomon Kline, the decedent, had lived nearly all his life in Snyder County. About two months prior to his death he removed to the home of his son-in-law, George F. Fertig, in East Buffalo Township, Union County, where he died on March 8, 1922, leaving his last will and testament, wherein he appointed his said son-in-law, George F. Fertig, as executor of his estate.

At various times before his death his said son-in-law had become indebted to him for various sums of money, giving his notes as security therefor as follows: One note for $533, dated March 9, 1915; one note for $110, dated March 11, 1916; one note for $100, dated Jan. 26, 1917; one note for $600, dated Dec. 21, 1917; one note for $90, dated Oct. 3, 1918, or, in all, aggregating the sum of $1433.

4 D. & C.

These notes were held for safekeeping by Squire A. B. Dauberman, of Kratzerville, Snyder County, which place had been the former residence of the decedent.

Sometime before his death the decedent got these notes from Dauberman, he sending a written order to him for their delivery to William Fertig, who delivered them to the decedent, who then gave them to his said son-in-law, George F. Fertig, "for keeping him" and for care given to Charles Kline, his imbecile son.

The learned auditor, in making distribution of the funds of the estate of this said decedent, regarded these said notes as gifts from Solomon Kline, the decedent, to his said son-in-law, George F. Fertig, and proceeded to distribute the estate according to the terms of the will.

Exceptions were filed to the auditor's report by Solomon Kline, Jr., a son of the decedent, he claiming that the said notes, aggregating the sum of $1433, ought to have been regarded as a part of the estate of the decedent and divided among his heirs, and that is the question before us on the exceptions filed.

From the records in this estate we gather that this decedent was an old man, left alone in the world, and that he was taken into the home of his son-in-law, George F. Fertig; that he appointed the said George F. Fertig as executor of his estate; that he on different occasions said that "whoever kept him should be paid;" that the Fertig family did keep him and care for his imbecile son; that there appears to have been a very close family relation between the decedent and the Fertig family.

There apparently came a time in the life of this decedent when he thought he ought to in some way reward the person who gave him a home, and, apparently, with this end in view, he sends to Squire Dauberman for his notes, and even is so anxious to get them that he signs a written order for Dauberman to deliver them to William Fertig, a son of George F. Fertig. The notes are brought to him and he presents them to George F. Fertig for giving him a home in his old age. It so happened that he lived only about two months after entering the Fertig family. These notes, apparently, were to be compensation or reward to Fertig for keeping him the balance of his life, whether it would be two months or two years, or for a longer time. His other property he divided among his children in equal shares, with one exception; so that whether Fertig kept this decedent two months or ten years, this was all he was to get for it. It so happened that he kept him about two months, and no doubt any of the other children had the same opportunity.

We have very stout testimony from Mrs. Jane Benfer, a daughter of the decedent, who testifies against her own interests, and says that the decedent told her that he had given things to George F. Fertig for keeping him. This testimony is fully and amply corroborated by the Fertig children.

The auditor has passed upon these notes and has found they were gifts from this decedent to his son-in-law. His findings are entitled to the same weight as is the verdict of a jury, and will not be set aside except on such grounds as would justify the setting aside of a verdict and the granting of a new trial. This principle of law is so familiar that we need not cite decisions of the upper courts to sustain it.

Then, again, the burden is upon the exceptant to sustain his exceptions. We have carefully gone over all the testimony taken, as well as the files of the estate, and we find nothing to set aside the report of the auditor. The exceptant has failed to give us any legal reasons why we should set aside this auditor's report and sustain his exceptions.

Kline's Estate.

And now, to wit, March 4, 1924, the exceptions to the report of the auditor are dismissed, the auditor's report is confirmed, and it is ordered that distribution be made in accordance therewith.